IN THE CIRCUIT COURT FOR WILSON COUNTY, TENNESSEE
AT LEBANON

SOUTHEASTERN LAND INVESTMENT, LLC )
and WILSON LAND INVESTMENTS, LLC )
                                        )

     Plaintiffs, )
                                        )

v. )     Docket No.: 2019 CV·197
                                        )     JURY DEMAND

COMMONWEALTH LAND TITLE )
INSURANCE COMPANY, )
                                        )

     Defendant. )

---

## COMPLAINT

---

Southeastern Land Investment, LLC and Wilson Land Investments, LLC hereby assert

the following complaint:

### I. PARTIES

1.     The plaintiff, Southeastern Land Investment, LLC ("SLI"), was, prior to the below-

described merger, a limited liability company organized under Tennessee law with its principal

place of business in Gallatin, Tennessee.

2.     The plaintiff, Wilson Land Investments, LLC ("WLI"), is a limited liability

company organized under Tennessee law with its principal place of business in Gallatin,

Tennessee.

3.     The defendant, Commonwealth Land Title Insurance Company

("Commonwealth"), is an insurance company incorporated in the Commonwealth of Pennsylvania

that has its principal place of business in Jacksonville, Florida.

EXHIBIT
A

## II. JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this action pursuant to Tenn. Code Ann. §§ 16-11-101, *et seq.*

5.     This Court has personal jurisdiction over Commonwealth under the Tennessee and United States constitutions.     This Court may exercise general, personal jurisdiction over Commonwealth because Commonwealth's contacts with Tennessee are of such a continuous and systematic nature that Tennessee may exercise personal jurisdiction over it.

6.     This Court is the proper venue for this action pursuant to Tenn. Code Ann. §§ 20-4-103 and 20-4-104 because the real property to which this action relates is located in this county and a substantial amount of the acts, events, and occurrences giving rise to this action occurred in this county.

## III. FACTS

A.     **The Properties.**

7.     SLI was a land developer in middle Tennessee, the primary business of which involved the identification and acquisition of appropriate tracts of land for the development of residential housing communities and the eventual development of those communities.

8.     In late 2006 and early 2007, SLI identified three contiguous tracts of land that it believed would be appropriate for a potential residential housing development in Wilson County, Tennessee.  At that time, the easternmost tract was owned by Estill Clark Goodwin and Beverly Beard Goodwin (the "Goodwin Tract").  The center property was owned by Jessie C. Walker and Cynthia D. Walker (the "Walker Tract").  The westernmost tract was owned by Lo Lien family (the "Lo Lien Tract", which with the Goodwin Tract and Walker Tract are collectively referred to as the "Property").

2

9.     In anticipation of the potential purchase of the Property, SLI obtained title commitments from Commonwealth for each tract.

10.    Based on the representations made in the title commitments, SLI purchased the Goodwin Tract and Walker Tract by warranty deeds dated June 18, 2007.

11.    SLI purchased title insurance from Commonwealth for the Goodwin Tract and was issued a title insurance policy dated June 19, 2007, policy number C30-0120272, a copy of which is attached as **Exhibit 1**. SLI purchased title insurance from Commonwealth for the Walker Tract and was issued a title insurance policy dated June 19, 2007, policy number C30-0120273, a copy of which is attached as **Exhibit 2**. The policies for the Goodwin Tract and Walker Tract are collectively referred to herein as "the Policies."

12.    On March 23, 2010, SLI transferred title to the Property to WLI by quitclaim deed.

13.    On April 22, 2015, WLI transferred title to the Property to WM Partners ("WMP") by warranty deed.

14.    On March 14, 2018 WLI and SLI underwent a merger whereby SLI was merged into WLI, with WLI becoming the surviving entity.

**B.     The Policies.**

15.    The Policies define "Insured" as:

"(d)    'Insured': The Insured named in Schedule A.

(ii) The term 'Insured' also includes...

(B) successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization..."

16.    SLI is an Insured under the Policies because SLI is the Insured named in Schedule A. WLI is an Insured under the Policies because WLI is the successor to SLI by virtue of its merger with SLI.

3

17.    The Policies insure against loss or damage sustained or incurred by an Insured by reason of...

"2. Any defect in or lien or encumbrance on the Title."

18.    The Policies provide that coverage under the Policies includes but is not limited to insurance against loss from . . .

"(c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. . . ."

**C.    The Easement.**

19.    In the course of WMP developing the Property, WMP received notice from the Tennessee Valley Authority ("TVA") on April 11, 2016 of a TVA easement that bisects the Goodwin and Walker Tracts and encumbers both properties (the "Easement").

20.    The Policies did not have any exception from coverage for the Easement.

21.    The Easement is a defect in and encumbrance on the title to the Property.

22.    SLI and WLI sustained or incurred loss or damage by reason of the Easement, including but not limited to loss or damage that SLI and WLI themselves incurred and the liability WLI has to WMP by reason of the warranties of title in the warranty deed WLI gave to WMP.

23.    Under the Policies, Commonwealth insured against loss or damage sustained or incurred by SLI and WLI by reason of the Easement.

24.    On May 23, 2016, SLI gave Commonwealth notice of the Easement and made a claim under the Policies.  Commonwealth denied SLI's claim on October 24, 2016.

## IV.    CAUSES OF ACTION

**A.    Breach of the Contract.**

4

25.     WLI incorporates by reference the allegations set forth in paragraphs 1 through 23 above.

26.     The Policies are legal and binding contracts, supported by adequate consideration and enforceable according to their terms.

27.     SLI and WLI performed all of their obligations under the Policies, and all conditions precedent to bringing this action have been fulfilled or waived.

28.     Commonwealth materially breached the Policies by failing to cover the loss or damage SLI and WLI sustained or incurred, and will continue to sustain or incur, by reason of the Easement.

29.     As a result of Commonwealth's material breaches of the Policies, SLI and WLI have been damaged.

30.     The actual damages SLI and WLI have suffered as a result of Commonwealth's material breaches of the Policies are estimated to be no less than $1,000,000.00.

WHEREFORE, premises considered, Southeastern Land Investment, LLC and Wilson Land Investments, LLC pray as follows:

1.     That the Court award them a judgment against Commonwealth for all damages to which they are entitled, which damages are estimated to be no less than $1,000,000.00;

2.     That the Court award them a judgment against Commonwealth for their reasonable attorneys' fees and litigation expenses;

3.     That the Court award them pre-judgment interest on all amounts to which they are entitled;

4.     That the Court empanel a jury to try all issues triable by jury; and

5.     That the Court award them such further relief as it may deem appropriate.

RESPECTFULLY SUBMITTED,

Todd E. Panther (#14438)
Lauren Z. Curry (#30123)
**Sherrard Roe Voigt & Harbison, PLC**
150 Third Ave South, Suite 1100
Nashville, TN 37201
(615) 742-4200 – telephone
(615) 742-4539 – fax
tpanther@srvhlaw.com
lcurry@srvhlaw.com
*Counsel for Southeastern Land Investment, LLC and*
*Wilson Land Investments, LLC*

6



# OWNER'S POLICY OF TITLE INSURANCE

## Issued by Commonwealth Land Title Insurance Company

**POLICY NUMBER**

**C30-0120272**



Commonwealth Land Title Insurance Company is a member of the LandAmerica family of title insurance underwriters.

Any notice of claim and any other notice or statement in writing required to be given to the Company under this Policy must be given to the Company at the address shown in Section 18 of the Conditions.

**COVERED RISKS**

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, COMMONWEALTH LAND TITLE INSURANCE COMPANY, a Nebraska corporation (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 9 and 10, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1. Title being vested other than as stated in Schedule A.
2. Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from
   (a) A defect in the Title caused by
      (i) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
      (ii) failure of any person or Entity to have authorized a transfer or conveyance;
      (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
      (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;
      (v) a document executed under a falsified, expired, or otherwise invalid power of attorney;
      (vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
      (vii) a defective judicial or administrative proceeding.
   (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.
   (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.
3. Unmarketable Title.
4. No right of access to and from the Land.
5. The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (a) the occupancy, use, or enjoyment of the Land;
   (b) the character, dimensions, or location of any improvement erected on the Land;
   (c) the subdivision of land; or
   (d) environmental protection
   if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.
6. An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.
7. The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.
8. Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.
9. Title being vested other than as stated in Schedule A or being defective
   (a) as a result of the avoidance in whole or in part, or from a court order providing an alternative remedy, of a transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction vesting Title as shown in Schedule A because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or
   (b) because the instrument of transfer vesting Title as shown in Schedule A constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records
      (i) to be timely, or
      (ii) to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.
10. Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 9 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.

IN WITNESS WHEREOF, the Company has caused this Policy to be signed with the facsimile signatures of its President and Secretary and sealed as required by its By-Laws.

COMMONWEALTH LAND TITLE INSURANCE COMPANY

Attest:

Secretary

(SEAL)

By: *Theodore L Chandler Jr*

President

Dbl Cover – ALTA Owner's Policy (06/17/06)
Form 1190-127

ORIGINAL

Valid only if Schedules A and B are attached

NJRB 1-15

Case 3:19-cv-00504   Document 1-1   Filed 06/14/19   Page 7 of 49 PageID #: 11

EXHIBIT 1



COMMONWEALTH LAND TITLE INSURANCE COMPANY

## SCHEDULE A

Amount of Insurance: **$700,000.00**

Policy No. **C30-0120272**

Premium: **Standard**

File No. **06-1535**

Date of Policy: **June 19, 2007,** at **1:23 P.M.**

1. Name of Insured: **SOUTHEASTERN LAND INVESTMENT, LLC, a Tennessee limited liability company**

2. The estate or interest in the land which is covered by this policy is: **Fee Simple**

3. Title to the estate or interest in the land is vested in:

   **SOUTHEASTERN LAND INVESTMENT, LLC, a Tennessee limited liability company**

4. The land referred to in this Policy is described in said instrument, is situated in the County of Wilson, State of Tennessee, and is identified as follows:

   **SEE ATTACHED EXHIBIT "A"**

   Being the same property conveyed to SOUTHEASTERN LAND INVESTMENT, LLC, a Tennessee limited liability company, by deed from ESTILL CLARK GOODWIN and wife, BEVERLY BEARD GOODWIN, dated 06/18/2007, and of record in Book 1254, Page 1784, Register's Office for Wilson County, Tennessee.

*ROCHELLE, MCCULLOCH & AULDS, P.L.L.C.*

Countersigned: _____

Authorized Officer or Agent

American Land Title Association OWNER
Schedule A
FORM 4190



COMMONWEALTH LAND TITLE INSURANCE COMPANY

## SCHEDULE A (continued)

Policy No.    **C30-0120272**

File No.    **06-1535**

## EXHIBIT "A"

Being a tract of land lying in Wilson County, Tennessee, also being Tract No. 1 of the Katherine Watson Property, as of record in Plat Book 13, Page 57, at the Register's Office for Wilson County, Tennessee, and being more particularly described as follows;

Beginning at an existing iron rod in the northerly right-of- way line of Coles Ferry Pike, 50 feet in width, at a corner common with Lot 27 of Barton's Cove, as of record in Plat Book 24, Page 263, at the Register's Office for Wilson County, Tennessee, also being the property of Gary R. Dancy, Et Ux, as of record in Deed Book 1048, Page 918, at the Register's Office for Wilson County, Tennessee, said existing iron rod being located at Northing: 708,069.85; Easting: 1,857,124.59; on the State Plane Coordinate System NAD-83 (1995);

Thence with the northerly right-of-way line of Coles Ferry Pike, North 57 deg 48 min 49 sec West, 236.33 feet to an iron rod set;

Thence with a curve to the right, along an arc length of 247.75 feet, the central angle of which is 04 deg 47 min 59 sec, the radius of which is 2957.43 feet, the chord of which is North 55 deg 24 min 49 sec West, 247.67 feet to an iron rod set;

Thence North 53 deg 00 min 50 sec West, 367.22 feet to an iron rod set;

Thence with a curve to the right, along an arc length of 365.61 feet, the central angle of which is 03 deg 42 min 55 sec, the radius of which is 5638.43 feet, the chord of which is North 51 deg 09 min 22 sec West, 365.55 feet to an existing iron rod, at a corner common with the property of New Hope Cumberland Presbyterian Church, as of record in Deed Book 973, Page 1814, at the Register's Office for Wilson County, Tennessee;

Thence leaving the northerly right-of-way line of Coles Ferry Pike, with the easterly property line of New Hope Cumberland Presbyterian Church, North 07 deg 37 min 14 sec East, 994.20 feet to an existing iron rod, at a corner common with Lot 7 of the Addition of Tract 7 to Tract Division, as of record in Plat Book 15, Page 166, at the Register's Office for Wilson County, Tennessee, also being the property of Jessie C. Walker, Et Ux, as of record in Deed Book 322, Page 114, at the Register's Office for Wilson County, Tennessee;

Thence with the southerly property line of said Lot 7, South 82 deg 12 min 17 sec East, 1034.31 feet to an iron rod set, in the westerly terminus of Barton Shore;

Thence leaving the westerly terminus of Barton Shore, South 06 deg 22 min 48 sec West, 1571.55 feet to the POINT OF BEGINNING. Containing 1,362,000 square feet or 31.267 acres more or less.

American Land Title Association OWNERS
Schedule A (continued)
FORM 4100



COMMONWEALTH LAND TITLE INSURANCE COMPANY

## SCHEDULE B
## EXCEPTIONS FROM COVERAGE

Policy No.    **C30-0120272**

File No.    **06-1535**

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Rights or claims of parties other than Insured in actual possession of any or all of the property.

2. Unrecorded easements, discrepancies or conflicts in boundary lines, shortage in area and encroachments, which an accurate and complete survey would disclose.

3. Unfiled mechanic's or materialmen's liens.

4. Taxes for the year 2007 are a lien not yet due and payable. Taxes for the year 2006 are paid.
   Map 34 Parcel 36.00

5. Subject to "roll-back taxes" for the statutory period if the land is converted to a use other than those stipulated in the provisions of T.C.A., Sec. 67-5-1005 through 67-5-1007. Application from Tax Assessor of record in Green Belt Book 4, Page 307, Register's Office for Wilson County, Tennessee.

6. Subject to any matters shown on the plat of record in Plat Book 13, Page 57.

7. Right of Way and Utility easements set forth in the Restrictive Covenants of record in Trust Deed Book 369, Page 93.

8. Right of Way Easement in favor of Columbia Gulf Transmission, of record in Trust Deed Book 157, Page 629.

9. The acreage mentioned in the legal description is only for convenience in identifying the tract insured; it is not intended that this policy insure the amount of acreage.

10. Deed of Trust from SOUTHEASTERN LAND INVESTMENT, LLC, a Tennessee limited liability company, to OLDHAM & DUNNING, LLC of SUMNER COUNTY, TENNESSEE, Trustee, dated 06/18/2007, recorded in Book 1254, page 1794, in the Register's Office for Wilson County, Tennessee, securing the original principal sum of $2,200,000.00 to THE FARMERS BANK as set forth therein.

American Land Title Association OWNERS
Schedule B – Part II
FORM 4100

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.     (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
    (i) the occupancy, use, or enjoyment of the Land;
    (ii) the character, dimensions, or location of any improvement erected on the Land;
    (iii) the subdivision of land; or
    (iv) environmental protection;
    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
    (a) created, suffered, assumed, or agreed to by the Insured Claimant;
    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c) resulting in no loss or damage to the Insured Claimant;
    (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
    (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
    (a) a fraudulent conveyance or fraudulent transfer; or
    (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy;
5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

## CONDITIONS

### 1 DEFINITION OF TERMS
The following terms when used in this policy mean:
    (a) "Amount of Insurance": The amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b), or decreased by Sections 10 and 11 of these Conditions.
    (b) "Date of Policy": The date designated as "Date of Policy" in Schedule A.
    (c) "Entity": A corporation, partnership, trust, limited liability company, or other similar legal entity.
    (d) "Insured": The Insured named in Schedule A.
      (i) The term "Insured" also includes
        (A) successors to the Title of the Insured by operation of law as distinguished from purchase, including heirs, devisees, survivors, personal representatives, or next of kin;
        (B) successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization;
        (C) successors to an Insured by its conversion to another kind of Entity;
        (D) a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title
          (1) if the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,
          (2) if the grantee wholly owns the named Insured,
          (3) if the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity, or
          (4) if the grantee is a trustee or beneficiary of a trust created by a written instrument established by the Insured named in Schedule A for estate planning purposes.
      (ii) With regard to (A), (B), (C), and (D) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured.
    (e) "Insured Claimant": An Insured claiming loss or damage.
    (f) "Knowledge" or "Known": Actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title.
    (g) "Land": The land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.
    (h) "Mortgage": Mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.
    (i) "Public Records": Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.
    (j) "Title": The estate or interest described in Schedule A.
    (k) "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title to be released from the obligation to purchase, lease, or land if there is a contractual condition requiring the delivery of marketable title.

### 2 CONTINUATION OF INSURANCE
The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

### 3 NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT
The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge shall come to an Insured hereunder of any claim of title or interest that is adverse to the Title, as Insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if the Title, as Insured, is rejected as Unmarketable Title. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's

liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

**4. PROOF OF LOSS**

In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

**5. DEFENSE AND PROSECUTION OF ACTIONS**

(a) Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.

(b) The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title, as insured, or to prevent or reduce loss or damage to the Insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

(c) Whenever the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction, and it expressly reserves the right, in its sole discretion, to appeal any adverse judgment or order.

**6. DUTY OF INSURED CLAIMANT TO COOPERATE**

(a) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b) The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the

Company, it is necessary in the administration of the claim. Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

**7. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY**

In case of a claim under this policy, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Insurance.

To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay.

Upon the exercise by the Company of this option, all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in this subsection, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b) To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant.

(i) To pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

(ii) To pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

**8. DETERMINATION AND EXTENT OF LIABILITY**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a) The extent of liability of the Company for loss or damage under this policy shall not exceed the lesser of

(i) the Amount of Insurance; or

(ii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy.

(b) If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title, as insured,

(i) the Amount of Insurance shall be increased by 10%, and

(ii) the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

(c) In addition to the extent of liability under (a) and (b), the Company will also pay those costs, attorneys' fees, and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

**9. LIMITATION OF LIABILITY**

(a) If the Company establishes the Title, or removes the alleged defect, lien, or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final

determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title, as insured.

(c)    The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

**10.    REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY**

All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Amount of Insurance by the amount of the payment.

**11.  LIABILITY NONCUMULATIVE**

The Amount of Insurance shall be reduced by any amount the Company pays under any policy insuring a Mortgage to which exception is taken in Schedule B or to which the Insured has agreed, assumed, or taken subject, or which is executed by an Insured after Date of Policy and which is a charge or lien on the Title, and the amount so paid shall be deemed a payment to the Insured under this policy.

**12.  PAYMENT OF LOSS**

When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

**13. RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT**

(a)    Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees, and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise, or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies.

If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.

(b)    The Company's right of subrogation includes the rights of the Insured to Indemnities, guaranties, other policies of insurance, or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights.

**14. ARBITRATION**

Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured. All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured.  Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

**15. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT**

(a)    This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company.   In interpreting any provision of this policy, this policy shall be construed as a whole.

(b)    Any claim of loss or damage that arises out of the status of the Title or by any action asserting such claim shall be restricted to this policy.

(c)    Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.

(d)    Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions. Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.

**16. SEVERABILITY**

In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid, but all other provisions shall remain in full force and effect.

**17. CHOICE OF LAW; FORUM**

(a)    Choice of Law:    The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies, or enforcement of policies of title insurance of the jurisdiction where the Land is located.

Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title that are adverse to the Insured and to interpret and enforce the terms of this policy.  In neither case shall the court or arbitrator apply its conflicts of law principles to determine the applicable law.

(b)    Choice of Forum:  Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

**18. NOTICES, WHERE SENT**

Any notice of claim and any other notice or statement in writing required to be given to the Company under this Policy must be given to the Company at: Consumer Affairs Department PO Box 27567, Richmond, Virginia 23261-7567.

---

## THANK YOU.

Title insurance provides for the protection of your real estate investment. We suggest you keep this policy in a safe place where it can be readily available for future reference.

If you have questions about title insurance or the coverage provided by this policy, contact the office that issued this policy, or you may call or write:

Commonwealth Land Title Insurance Company
Consumer Affairs
P.O. Box 27567
Richmond, Virginia 23261-7567
*telephone, toll free:* 800 446-7086
*web:* www.landam.com

We thank you for choosing to do business with Commonwealth Land Title Insurance Company, and look forward to meeting your future title insurance needs.

Commonwealth Land Title Insurance Company
is a member of the LandAmerica family of title insurance underwriters.



B 1190-127

Case 3:19-cv-00504   Document 1-1   Filed 06/14/19   Page 13 of 49 PageID #: 17

# OWNER'S POLICY OF TITLE INSURANCE

## Issued by Commonwealth Land Title Insurance Company

**POLICY NUMBER**
C30-0120273



LandAmerica
Commonwealth

*Commonwealth Land Title Insurance Company is a member of the
LandAmerica family of title insurance underwriters.*

Any notice of claim and any other notice or statement in writing required to be given to the Company under this Policy must be given to the Company at the address shown in Section 18 of the Conditions.

**COVERED RISKS**

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, COMMONWEALTH LAND TITLE INSURANCE COMPANY, a Nebraska corporation (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 9 and 10, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1. Title being vested other than as stated in Schedule A.
2. Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from
   (a) A defect in the Title caused by
       (i) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
       (ii) failure of any person or Entity to have authorized a transfer or conveyance;
       (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
       (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;
       (v) a document executed under a falsified, expired, or otherwise invalid power of attorney;
       (vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
       (vii) a defective judicial or administrative proceeding.
   (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.
   (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.
3. Unmarketable Title.
4. No right of access to and from the Land.
5. The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (a) the occupancy, use, or enjoyment of the Land;
   (b) the character, dimensions, or location of any improvement erected on the Land;
   (c) the subdivision of land; or
   (d) environmental protection
   if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.
6. An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.
7. The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.
8. Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.
9. Title being vested other than as stated in Schedule A or being defective
   (a) as a result of the avoidance in whole or in part, or from a court order providing an alternative remedy, of a transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction vesting Title as shown in Schedule A because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or
   (b) because the instrument of transfer vesting Title as shown in Schedule A constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records
       (i) to be timely, or
       (ii) to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.
10. Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 9 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.

IN WITNESS WHEREOF, the Company has caused this Policy to be signed with the facsimile signatures of its President and Secretary and sealed as required by its By-Laws.

COMMONWEALTH LAND TITLE INSURANCE COMPANY

Attest:



Secretary

By: *Theodore L Chandler, Jr.*

President

Dbl Cover – ALTA Owner's Policy (06/17/06)
Form 1190-127
ORIGINAL
**EXHIBIT 2**
NJRB 1-15
Valid only if Schedules A and B are attached
Case 3:19-cv-00504   Document 1-1   Filed 06/14/19   Page 14 of 49 PageID #: 18



COMMONWEALTH LAND TITLE INSURANCE COMPANY

## SCHEDULE A

Amount of Insurance: **$1,255,000.00**

Policy No. **C30-0120273**

Premium: **Standard**

File No. **06-1536**

Date of Policy: **June 19, 2007, at 1:23 P.M.**

1. Name of Insured: **SOUTHEASTERN LAND INVESTMENT, LLC**

2. The estate or interest in the land which is covered by this policy is: **Fee Simple**

3. Title to the estate or interest in the land is vested in:

   **SOUTHEASTERN LAND INVESTMENT, LLC**

4. The land referred to in this Policy is described in said instrument, is situated in the County of Wilson, State of Tennessee, and is identified as follows:

   **SEE ATTACHED EXHIBIT "A"**

   **Being the same property conveyed to SOUTHEASTERN LAND INVESTMENT, LLC, by deed from JESSIE C. WALKER and wife, CYNTHIA D. WALKER, dated 06/18/2007, and of record in Book 1254, Page 1789, Register's Office for Wilson County, Tennessee.**

*ROCHELLE, MCCULLOCH & AULDS, P.L.L.C.*

Countersigned:

Authorized Officer or Agent

American Land Title Association OWNER
Schedule A
FORM 4100



COMMONWEALTH LAND TITLE INSURANCE COMPANY

## SCHEDULE A (continued)

Policy No.    **C30-0120273**

File No.    **06-1536**

### EXHIBIT "A"

Being a tract of land lying in Wilson County, Tennessee, also being Lot 7 of the Addition of Tract 7 to Tract Division, as of record in Plat Book 15, Page 166, at the Register's Office for Wilson County, Tennessee, and being more particularly described as follows:

Beginning at an iron rod set in the easterly right-of-way line of Cairo Bend, 50 feet in width, at a corner common with Lot 5 of the Addition of Tract 7 to Tract Division, also being the property of Deborah A. Petty, Et Vir, as of record in Deed Book 883, Page 991, at the Register's Office for Wilson County, Tennessee, said iron rod set being located at Northing: 710,994.62; Easting: 1,854,681.99; on the State Plane Coordinate System NAD-83 (1995);

Thence leaving the easterly right-of-way line of Cairo Bend, with the southerly property line of said Lot 5, with a curve to the left, along an arc length of 40.74 feet, the central angle of which is 93 deg 21 min 59 sec, the radius of which is 25.00 feet, the chord of which is South 35 deg 20 min 42 sec East, 36.38 feet to an existing iron rod;

Thence South 81 deg 41 min 48 sec East, 732.22 feet to an iron rod set;

Thence with a curve to the left, along an arc length of 266.39 feet, the central angle of which is 16 deg 06 min 17 sec, the radius of which is 947.72 feet, the chord of which is North 89 deg 52 min 07 sec East, 265.51 feet to an iron rod set;

Thence with a curve to the right, along an arc length of 193.37 feet, the central angle of which is 15 deg 05 min 17 sec, the radius of which is 734.31 feet, the chord of which is North 89 deg 21 min 36 sec East, 192.81 feet to an existing iron rod;

Thence South 83 deg 05 min 45 sec East, 11.99 feet to an existing iron pipe;

Thence with the easterly property line of said Lot 5 North 02 deg 23 min 15 sec East, 424.29 feet to an iron rod set in the southerly property line of Anne Lo Lien, as of record in Deed Book 452, Page 969, at the Register's Office for Wilson County, Tennessee, and at a corner common with Lot 6 of the Addition of Tract 7 to Tract Division, also being the property of James A. Spears, Et Ux, as of record in Deed Book 950, Page 1133, at the Register's Office for Wilson County, Tennessee;

Thence with the southerly property line of Anne Lo Lien, South 83 deg 04 min 42 sec East, 1056.29 feet to an existing concrete monument, at a corner common with the property of the U.S. Corp of Engineers;

Thence with the westerly property line of U.S. Corp of Engineers, South 24 deg 29 min 09 sec East, 609.21 feet to an existing "T" bar;

American Land Title Association OWNERS
Schedule A (continued)
FORM 4160



**COMMONWEALTH LAND TITLE INSURANCE COMPANY**

## SCHEDULE A (continued)

Policy No.    **C30-0120273**

File No.    **06-1536**

### EXHIBIT "A" (continued)

Thence South 00 deg 04 min 59 sec East, 580.44 feet to an existing iron rod, at a corner common with Lot 14 of Barton's Cove, as of record in Plat Book 24, Page 263, at the Register's Office for Wilson County, Tennessee, also being the property of Holly A. Drury, Et Vir, as of record in Deed Book 1080, Page 118, at the Register's Office for Wilson County, Tennessee;

Thence with the westerly property line of said Lot 14, South 07 deg 33 min 06 sec West, 367.62 feet to an iron rod set in the westerly terminus of Barton Shore, at a corner common with Tract No. 1 of the Katherine Watson Property, as of record in Plat Book 13, Page 57, at the Register's Office for Wilson County, Tennessee, also being the property of Estill Clark Goodwin, Et Ux, as of record in Deed Book 289, Page 143, at the Register's Office for Wilson County, Tennessee;

Thence leaving the westerly terminus of Barton Shore, with the northerly property line of said Tract No. 1, North 82 deg 12 min 17 sec West, 1034.31 feet to an existing iron rod, at a corner common with New Hope Cumberland Presbyterian Church, as of record in Deed Book 973, Page 1814, at the Register's Office for Wilson County, Tennessee;

Thence with the northerly property line of New Hope Cumberland Presbyterian Church, North 81 deg 35 min 53 sec West, 748.63 feet to an existing iron rod, at a corner common with the property of J.R. Woodcock, Et Ux, as of record in Deed Book 1043, Page 1216, at the Register's Office for Wilson County, Tennessee, and at a corner common with Lot 1A of Tract 1, Henderson Cole & Joe B. Ferrell, as of record in Plat Book 18, Page 216, at the Register's Office for Wilson County, Tennessee, also being the property of Charles E. Flatt, Et Ux, as of record in Deed Book 422, Page 475, at the Register's Office for Wilson County, Tennessee;

Thence with the easterly property line of said Lot 1A, North 20 deg 23 min 15 sec East, 993.22 feet to an existing iron rod, at a corner common with Lot 4 of the Addition of Tract 7 to Tract Division, also being the property of Jerry M. Swords, Et Ux, as of record in Deed Book 404, Page 33, at the Register's Office for Wilson County, Tennessee;

Thence with the northerly property line of said Lot 4, with a curve to the left, along an arc length of 180.21 feet, the central angle of which is 15 deg 05 min 17 sec, the radius of which is 684.31 feet, the chord of which is South 89 deg 21 min 37 sec West, 179.68 feet to an iron rod set;

Thence with a curve to the right, along an arc length of 280.44 feet, the central angle of which is 16 deg 06 min 17 sec, the radius of which is 997.72 feet, the chord of which is South 89 deg 52 min 07 sec West, 279.52 feet to an iron rod set;

American Land Title Association OWNERS
Schedule A (continued)
FORM 4100



COMMONWEALTH LAND TITLE INSURANCE COMPANY

| | |
|---|---|
| Policy No. | **C30-0120273** |
| File No. | **06-1536** |

**EXHIBIT "A" (continued)**

Thence North 81 deg 41 min 56 sec West, 737.01 feet to an iron rod set;

Thence with a curve to the left, along an arc length of 38.37 feet, the central angle of which is 87 deg 56 min 12 sec, the radius of which is 25.00 feet, the chord of which is South 54 deg 00 min 12 sec West, 34.71 feet to an iron rod set in the easterly right-of-way line of Cairo Bend;

Thence with the easterly right-of-way line of Cairo Bend, with a curve to the right, along an arc length of 100.68 feet, the central angle of which is 01 deg 18 min 11 sec, the radius of which is 4426.70 feet, the chord of which is North 10 deg 41 min 12 sec East, 100.68 feet to the POINT OF BEGINNING. Containing 2,264,570 square feet or 51.987 acres more or less.

American Land Title Association OWNERS
Schedule A (continued)
FORM 4100



COMMONWEALTH LAND TITLE INSURANCE COMPANY

## SCHEDULE B
## EXCEPTIONS FROM COVERAGE

Policy No.    **C30-0120273**

File No.    **06-1536**

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Rights or claims of parties other than Insured in actual possession of any or all of the property.

2. Unrecorded easements, discrepancies or conflicts in boundary lines, shortage in area and encroachments, which an accurate and complete survey would disclose.

3. Unfiled mechanic's or materialmen's liens.

4. Taxes for the year 2007 are a lien not yet due and payable. Taxes for the year 2006 are paid.
   Map 26 Parcel 43.03

5. Subject to "roll-back taxes" for the statutory period if the land is converted to a use other than those stipulated in the provisions of T.C.A ., Sec. 67-5-1005 through 67-5-1007. Application from Tax Assessor of record in Green Belt Book 1099, Page 385, Register's Office for Wilson County, Tennessee.

6. Subject to any matters shown on the plat of record in Plat Book 15, Page 166, including but not limited to Tennessee Valley Authority right-of-way, easement, and creek as shown thereon.

7. Subject to a non exclusive easement for ingress/egress of record in Deed Book 315, Page 131.

8. Right-of-Way Easement in favor of Tennessee Valley Authority, of record in Deed Book 151, Page 256.

9. Gas Line Easement in favor of Gulf Interstate Gas Company, of record in Trust Deed Book 157, Page 629.

10. Utility Easement as set forth in Covenant's and Restrictions, of record in Trust Deed Book 369, Page 93.

11. 25' Right-of-Way Easement as set forth in Covenant's and Restrictions, of record in Trust Deed Book 369, Page 93.

12. The acreage mentioned in the legal description is only for convenience in identifying the tract insured; it is not intended that this policy insure the amount of acreage.

13. Subject to Jessie Walker and Jesse Walker being one and the same person.

14. Subject to the rise, flow, overflow, exact location and meanderings of creek located upon or running adjacent to the land.

15. Deed of Trust from SOUTHEASTERN LAND INVESTMENT, LLC, a Tennessee limited liability company, to OLDHAM & DUNNING, LLC of SUMNER COUNTY, TENNESSEE, Trustee, dated 06/18/2007, recorded in Book 1254, page 1794, in the Register's Office for Wilson County, Tennessee, securing the original principal sum of $2,200,000.00 to THE FARMERS BANK as set forth therein.

American Land Title Association OWNERS
Schedule B - Part II
FORM 4100

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
    (i)   the occupancy, use, or enjoyment of the Land;
    (ii)  the character, dimensions, or location of any improvement erected on the Land;
    (iii) the subdivision of land; or
    (iv)  environmental protection;
    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.  Defects, liens, encumbrances, adverse claims, or other matters
    (a) created, suffered, assumed, or agreed to by the Insured Claimant;
    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c) resulting in no loss or damage to the Insured Claimant;
    (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
    (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
    (a) a fraudulent conveyance or fraudulent transfer; or
    (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

## CONDITIONS

### 1 DEFINITION OF TERMS

The following terms when used in this policy mean:

(a) "Amount of Insurance": The amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b), or decreased by Sections 10 and 11 of these Conditions.

(b) "Date of Policy": The date designated as "Date of Policy" in Schedule A.

(c) "Entity": A corporation, partnership, trust, limited liability company, or other similar legal entity.

(d) "Insured": The Insured named in Schedule A.
    (i) The term "Insured" also includes.
        (A) successors to the Title of the Insured by operation of law as distinguished from purchase, including heirs, devisees, survivors, personal representatives, or next of kin;
        (B) successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization;
        (C) successors to an Insured by its conversion to another kind of Entity;
        (D) a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title
            (1) If the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,
            (2) if the grantee wholly owns the named Insured,
            (3) if the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity, or
            (4) if the grantee is a trustee or beneficiary of a trust created by a written instrument established by the Insured named in Schedule A for estate planning purposes.
        (ii) With regard to (A), (B), (C), and (D) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured.
    (e) "Insured Claimant": An Insured claiming loss or damage.
    (f) "Knowledge" or "Known": Actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title.
    (g) "Land": The land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.

(h) "Mortgage": Mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.

(i) "Public Records": Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.

(j) "Title": The estate or interest described in Schedule A.

(k) "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

### 2. CONTINUATION OF INSURANCE

The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

### 3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT

The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge shall come to an Insured hereunder of any claim of title or interest that is adverse to the Title, as insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if the Title, as insured, is rejected as Unmarketable Title. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's

liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

**4. PROOF OF LOSS**

In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

**5. DEFENSE AND PROSECUTION OF ACTIONS**

(a)   Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.

(b)   The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title, as Insured, or to prevent or reduce loss or damage to the Insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

(c)   Whenever the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction, and it expressly reserves the right, in its sole discretion, to appeal any adverse judgment or order.

**6. DUTY OF INSURED CLAIMANT TO COOPERATE**

(a)   In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b)   The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the

Company, it is necessary in the administration of the claim. Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

**7.   OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY**

In case of a claim under this policy, the Company shall have the following additional options:

(a)   To Pay or Tender Payment of the Amount of Insurance.

To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay.

Upon the exercise by the Company of this option, all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in this subsection, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b)   To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant.

(i)   To pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

(ii)   To pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

**8.   DETERMINATION AND EXTENT OF LIABILITY**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a)   The extent of liability of the Company for loss or damage under this policy shall not exceed the lesser of

(i)   the Amount of Insurance; or

(ii)   the difference between the value of the Title as Insured and the value of the Title subject to the risk insured against by this policy.

(b)   If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title, as Insured,

(i)   the Amount of Insurance shall be increased by 10%, and

(ii)   the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

(c)   In addition to the extent of liability under (a) and (b), the Company will also pay those costs, attorneys' fees, and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

**9.   LIMITATION OF LIABILITY**

(a)   If the Company establishes the Title, or removes the alleged defect, lien, or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, all as Insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b)   In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final

determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title, as insured.

(c)    The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

**10.    REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY**

All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Amount of Insurance by the amount of the payment.

**11.    LIABILITY NONCUMULATIVE**

The Amount of Insurance shall be reduced by any amount the Company pays under any policy insuring a Mortgage to which exception is taken in Schedule B or to which the Insured has agreed, assumed, or taken subject, or which is executed by an Insured after Date of Policy and which is a charge or lien on the Title, and the amount so paid shall be deemed a payment to the Insured under this policy.

**12.    PAYMENT OF LOSS**

When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

**13.    RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT**

(a)    Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees, and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise, or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies.

If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.

(b)    The Company's right of subrogation includes the rights of the Insured to indemnities, guaranties, other policies of insurance, or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights.

**14. ARBITRATION**

Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured. All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

**15. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT**

(a)    This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company.    In interpreting any provision of this policy, this policy shall be construed as a whole.

(b)    Any claim of loss or damage that arises out of the status of the Title or by any action asserting such claim shall be restricted to this policy.

(c)    Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.

(d)    Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions. Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.

**16. SEVERABILITY**

In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid, but all other provisions shall remain in full force and effect.

**17. CHOICE OF LAW; FORUM**

(a)    Choice of Law:    The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies, or enforcement of policies of title insurance of the jurisdiction where the Land is located.

Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title that are adverse to the Insured and to interpret and enforce the terms of this policy. In neither case shall the court or arbitrator apply its conflicts of law principles to determine the applicable law.

(b)    Choice of Forum: Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

**18. NOTICES, WHERE SENT**

Any notice of claim and any other notice or statement in writing required to be given to the Company under this Policy must be given to the Company at: Consumer Affairs Department PO Box 27567 Richmond, Virginia 23261-7567.

---

## THANK YOU.

Title insurance provides for the protection of your real estate investment. We suggest you keep this policy in a safe place where it can be readily available for future reference.

If you have questions about title insurance or the coverage provided by this policy, contact the office that issued this policy, or you may call or write:

Commonwealth Land Title Insurance Company
Consumer Affairs
P.O. Box 27567
Richmond, Virginia 23261-7567
telephone, toll free: 800 446-7086
web: www.landam.com

We thank you for choosing to do business with Commonwealth Land Title Insurance Company, and look forward to meeting your future title insurance needs.

Commonwealth Land Title Insurance Company
is a member of the LandAmerica family of title insurance underwriters.


LandAmerica
Commonwealth

B 1190-127

SOUTHEASTERN LAND INVESTMENT, LLC )
and WILSON LAND INVESTMENTS, LLC )
                                     )
      Plaintiffs, )
                                       )
v.                                    )    Docket No.: 2019 CV-197
                                       )    JURY DEMAND
COMMONWEALTH LAND TITLE )
INSURANCE COMPANY, )
                                       )
      Defendant. )

---

## COMPLAINT

---

Southeastern Land Investment, LLC and Wilson Land Investments, LLC hereby assert the following complaint:

## I. PARTIES

1.     The plaintiff, Southeastern Land Investment, LLC ("SLI"), was, prior to the below-described merger, a limited liability company organized under Tennessee law with its principal place of business in Gallatin, Tennessee.

2.     The plaintiff, Wilson Land Investments, LLC ("WLI"), is a limited liability company organized under Tennessee law with its principal place of business in Gallatin, Tennessee.

3.     The defendant, Commonwealth Land Title Insurance Company ("Commonwealth"), is an insurance company incorporated in the Commonwealth of Pennsylvania that has its principal place of business in Jacksonville, Florida.

EXHIBIT
B

## II. JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to Tenn. Code Ann. §§ 16-11-101, *et seq.*

5.      This Court has personal jurisdiction over Commonwealth under the Tennessee and United States constitutions. This Court may exercise general, personal jurisdiction over Commonwealth because Commonwealth's contacts with Tennessee are of such a continuous and systematic nature that Tennessee may exercise personal jurisdiction over it.

6.      This Court is the proper venue for this action pursuant to Tenn. Code Ann. §§ 20-4-103 and 20-4-104 because the real property to which this action relates is located in this county and a substantial amount of the acts, events, and occurrences giving rise to this action occurred in this county.

## III. FACTS

**A.    The Properties.**

7.      SLI was a land developer in middle Tennessee, the primary business of which involved the identification and acquisition of appropriate tracts of land for the development of residential housing communities and the eventual development of those communities.

8.      In late 2006 and early 2007, SLI identified three contiguous tracts of land that it believed would be appropriate for a potential residential housing development in Wilson County, Tennessee. At that time, the easternmost tract was owned by Estill Clark Goodwin and Beverly Beard Goodwin (the "Goodwin Tract"). The center property was owned by Jessie C. Walker and Cynthia D. Walker (the "Walker Tract"). The westernmost tract was owned by Lo Lien family (the "Lo Lien Tract", which with the Goodwin Tract and Walker Tract are collectively referred to as the "Property").

2

9.     In anticipation of the potential purchase of the Property, SLI obtained title commitments from Commonwealth for each tract.

10.     Based on the representations made in the title commitments, SLI purchased the Goodwin Tract and Walker Tract by warranty deeds dated June 18, 2007.

11.     SLI purchased title insurance from Commonwealth for the Goodwin Tract and was issued a title insurance policy dated June 19, 2007, policy number C30-0120272, a copy of which is attached as **Exhibit 1**. SLI purchased title insurance from Commonwealth for the Walker Tract and was issued a title insurance policy dated June 19, 2007, policy number C30-0120273, a copy of which is attached as **Exhibit 2**. The policies for the Goodwin Tract and Walker Tract are collectively referred to herein as "the Policies."

12.     On March 23, 2010, SLI transferred title to the Property to WLI by quitclaim deed.

13.     On April 22, 2015, WLI transferred title to the Property to WM Partners ("WMP") by warranty deed.

14.     On March 14, 2018 WLI and SLI underwent a merger whereby SLI was merged into WLI, with WLI becoming the surviving entity.

**B.     The Policies.**

15.     The Policies define "Insured" as:

"(d)     'Insured': The Insured named in Schedule A.

(ii) The term 'Insured' also includes...

(B) successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization..."

16.     SLI is an Insured under the Policies because SLI is the Insured named in Schedule A. WLI is an Insured under the Policies because WLI is the successor to SLI by virtue of its merger with SLI.

3

17.    The Policies insure against loss or damage sustained or incurred by an Insured by reason of...

"2. Any defect in or lien or encumbrance on the Title."

18.    The Policies provide that coverage under the Policies includes but is not limited to insurance against loss from . . .

"(c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. . . ."

## C.    The Easement.

19.    In the course of WMP developing the Property, WMP received notice from the Tennessee Valley Authority ("TVA") on April 11, 2016 of a TVA easement that bisects the Goodwin and Walker Tracts and encumbers both properties (the "Easement").

20.    The Policies did not have any exception from coverage for the Easement.

21.    The Easement is a defect in and encumbrance on the title to the Property.

22.    SLI and WLI sustained or incurred loss or damage by reason of the Easement, including but not limited to loss or damage that SLI and WLI themselves incurred and the liability WLI has to WMP by reason of the warranties of title in the warranty deed WLI gave to WMP.

23.    Under the Policies, Commonwealth insured against loss or damage sustained or incurred by SLI and WLI by reason of the Easement.

24.    On May 23, 2016, SLI gave Commonwealth notice of the Easement and made a claim under the Policies. Commonwealth denied SLI's claim on October 24, 2016.

## IV.    CAUSES OF ACTION

## A.    Breach of the Contract.

4

25.    WLI incorporates by reference the allegations set forth in paragraphs 1 through 23 above.

26.    The Policies are legal and binding contracts, supported by adequate consideration and enforceable according to their terms.

27.    SLI and WLI performed all of their obligations under the Policies, and all conditions precedent to bringing this action have been fulfilled or waived.

28.    Commonwealth materially breached the Policies by failing to cover the loss or damage SLI and WLI sustained or incurred, and will continue to sustain or incur, by reason of the Easement.

29.    As a result of Commonwealth's material breaches of the Policies, SLI and WLI have been damaged.

30.    The actual damages SLI and WLI have suffered as a result of Commonwealth's material breaches of the Policies are estimated to be no less than $1,000,000.00.

WHEREFORE, premises considered, Southeastern Land Investment, LLC and Wilson Land Investments, LLC pray as follows:

1.    That the Court award them a judgment against Commonwealth for all damages to which they are entitled, which damages are estimated to be no less than $1,000,000.00;

2.    That the Court award them a judgment against Commonwealth for their reasonable attorneys' fees and litigation expenses;

3.    That the Court award them pre-judgment interest on all amounts to which they are entitled;

4.    That the Court empanel a jury to try all issues triable by jury; and

5.    That the Court award them such further relief as it may deem appropriate.

5

RESPECTFULLY SUBMITTED,

Todd E. Panther (#14438)
Lauren Z. Curry (#30123)
**Sherrard Roe Voigt & Harbison, PLC**
150 Third Ave South, Suite 1100
Nashville, TN 37201
(615) 742-4200 – telephone
(615) 742-4539 – fax
tpanther@srvhlaw.com
lcurry@srvhlaw.com
*Counsel for Southeastern Land Investment, LLC and*
*Wilson Land Investments, LLC*

6

# OWNER'S POLICY OF TITLE INSURANCE

## Issued by **Commonwealth Land Title Insurance Company**

 LandAmerica Commonwealth

*Commonwealth Land Title Insurance Company is a member of the LandAmerica family of title insurance underwriters.*

**POLICY NUMBER**

**C30-0120272**

Any notice of claim and any other notice or statement in writing required to be given to the Company under this Policy must be given to the Company at the address shown in Section 18 of the Conditions.

### COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, COMMONWEALTH LAND TITLE INSURANCE COMPANY, a Nebraska corporation (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 9 and 10, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1. Title being vested other than as stated in Schedule A.
2. Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from
   (a) A defect in the Title caused by
      (i) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
      (ii) failure of any person or Entity to have authorized a transfer or conveyance;
      (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
      (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;
      (v) a document executed under a falsified, expired, or otherwise invalid power of attorney;
      (vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
      (vii) a defective judicial or administrative proceeding.
   (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.
   (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.
3. Unmarketable Title.
4. No right of access to and from the Land.
5. The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (a) the occupancy, use, or enjoyment of the Land;
   (b) the character, dimensions, or location of any improvement erected on the Land;
   (c) the subdivision of land; or
   (d) environmental protection
   if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.
6. An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.
7. The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.
8. Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.
9. Title being vested other than as stated in Schedule A or being defective
   (a) as a result of the avoidance in whole or in part, or from a court order providing an alternative remedy, of a transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction vesting Title as shown in Schedule A because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or
   (b) because the instrument of transfer vesting Title as shown in Schedule A constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records
      (i) to be timely, or
      (ii) to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.
10. Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 9 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.

IN WITNESS WHEREOF, the Company has caused this Policy to be signed with the facsimile signatures of its President and Secretary and sealed as required by its By-Laws.

COMMONWEALTH LAND TITLE INSURANCE COMPANY

Attest: *Secretary*

(SEAL)

By: *Theodore L Chandler Jr* — President

Dbl Cover – ALTA Owner's Policy (06/17/06)
Form 1190-127

ORIGINAL

Valid only if Schedules A and B are attached
NJRB 1-15

**EXHIBIT 1**

Case 3:19-cv-00504   Document 1-1   Filed 06/14/19   Page 29 of 49 PageID #: 33



COMMONWEALTH LAND TITLE INSURANCE COMPANY

## SCHEDULE A

Amount of Insurance: **$700,000.00**

Policy No. **C30-0120272**

Premium: **Standard**

File No. **06-1535**

Date of Policy: **June 19, 2007,** at **1:23 P.M.**

1. Name of Insured: **SOUTHEASTERN LAND INVESTMENT, LLC, a Tennessee limited liability company**

2. The estate or interest in the land which is covered by this policy is: **Fee Simple**

3. Title to the estate or interest in the land is vested in:

   **SOUTHEASTERN LAND INVESTMENT, LLC, a Tennessee limited liability company**

4. The land referred to in this Policy is described in said instrument, is situated in the County of Wilson, State of Tennessee, and is identified as follows:

   **SEE ATTACHED EXHIBIT "A"**

   Being the same property conveyed to SOUTHEASTERN LAND INVESTMENT, LLC, a Tennessee limited liability company, by deed from ESTILL CLARK GOODWIN and wife, BEVERLY BEARD GOODWIN, dated 06/18/2007, and of record in Book 1254, Page 1784, Register's Office for Wilson County, Tennessee.

*ROCHELLE, McCULLOCH & AULDS, P.L.L.C.*

Countersigned: _____

Authorized Officer or Agent

American Land Title Association OWNER
Schedule A
FORM 4100



**Commonwealth**
LAND TITLE COMPANY

COMMONWEALTH LAND TITLE INSURANCE COMPANY

## SCHEDULE A (continued)

Policy No.  **C30-0120272**

File No.  **06-1535**

### EXHIBIT "A"

Being a tract of land lying in Wilson County, Tennessee, also being Tract No. 1 of the Katherine Watson Property, as of record in Plat Book 13, Page 57, at the Register's Office for Wilson County, Tennessee, and being more particularly described as follows;

Beginning at an existing iron rod in the northerly right-of- way line of Coles Ferry Pike, 50 feet in width, at a corner common with Lot 27 of Barton's Cove, as of record in Plat Book 24, Page 263, at the Register's Office for Wilson County, Tennessee, also being the property of Gary R. Dancy, Et Ux, as of record in Deed Book 1048, Page 918, at the Register's Office for Wilson County, Tennessee, said existing iron rod being located at Northing: 708,069.85; Easting: 1,857,124.59; on the State Plane Coordinate System NAD-83 (1995);

Thence with the northerly right-of-way line of Coles Ferry Pike, North 57 deg 48 min 49 sec West, 236.33 feet to an iron rod set;

Thence with a curve to the right, along an arc length of 247.75 feet, the central angle of which is 04 deg 47 min 59 sec, the radius of which is 2957.43 feet, the chord of which is North 55 deg 24 min 49 sec West, 247.67 feet to an iron rod set;

Thence North 53 deg 00 min 50 sec West, 367.22 feet to an iron rod set;

Thence with a curve to the right, along an arc length of 365.61 feet, the central angle of which is 03 deg 42 min 55 sec, the radius of which is 5638.43 feet, the chord of which is North 51 deg 09 min 22 sec West, 365.55 feet to an existing iron rod, at a corner common with the property of New Hope Cumberland Presbyterian Church, as of record in Deed Book 973, Page 1814, at the Register's Office for Wilson County, Tennessee;

Thence leaving the northerly right-of-way line of Coles Ferry Pike, with the easterly property line of New Hope Cumberland Presbyterian Church, North 07 deg 37 min 14 sec East, 994.20 feet to an existing iron rod, at a corner common with Lot 7 of the Addition of Tract 7 to Tract Division, as of record in Plat Book 15, Page 166, at the Register's Office for Wilson County, Tennessee, also being the property of Jessie C. Walker, Et Ux, as of record in Deed Book 322, Page 114, at the Register's Office for Wilson County, Tennessee;

Thence with the southerly property line of said Lot 7, South 82 deg 12 min 17 sec East, 1034.31 feet to an iron rod set, in the westerly terminus of Barton Shore;

Thence leaving the westerly terminus of Barton Shore, South 06 deg 22 min 48 sec West, 1571.55 feet to the POINT OF BEGINNING. Containing 1,362,000 square feet or 31.267 acres more or less.

American Land Title Association OWNERS
Schedule A (continued)
FORM 4100



COMMONWEALTH LAND TITLE INSURANCE COMPANY

## SCHEDULE B
## EXCEPTIONS FROM COVERAGE

Policy No.    C30-0120272

File No.    06-1535

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Rights or claims of parties other than Insured in actual possession of any or all of the property.

2. Unrecorded easements, discrepancies or conflicts in boundary lines, shortage in area and encroachments, which an accurate and complete survey would disclose.

3. Unfiled mechanic's or materialmen's liens.

4. Taxes for the year 2007 are a lien not yet due and payable. Taxes for the year 2006 are paid.
Map 34 Parcel 36.00

5. Subject to "roll-back taxes" for the statutory period if the land is converted to a use other than those stipulated in the provisions of T.C.A., Sec. 67-5-1005 through 67-5-1007. Application from Tax Assessor of record in Green Belt Book 4, Page 307, Register's Office for Wilson County, Tennessee.

6. Subject to any matters shown on the plat of record in Plat Book 13, Page 57.

7. Right of Way and Utility easements set forth in the Restrictive Covenants of record in Trust Deed Book 369, Page 93.

8. Right of Way Easement in favor of Columbia Gulf Transmission, of record in Trust Deed Book 157, Page 629.

9. The acreage mentioned in the legal description is only for convenience in identifying the tract insured; it is not intended that this policy insure the amount of acreage.

10. Deed of Trust from SOUTHEASTERN LAND INVESTMENT, LLC, a Tennessee limited liability company, to OLDHAM & DUNNING, LLC of SUMNER COUNTY, TENNESSEE, Trustee, dated 06/18/2007, recorded in Book 1254, page 1794, in the Register's Office for Wilson County, Tennessee, securing the original principal sum of $2,200,000.00 to THE FARMERS BANK as set forth therein.

American Land Title Association OWNERS
Schedule B – Part II
FORM 4100

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.    (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
       (i)   the occupancy, use, or enjoyment of the Land;
       (ii)   the character, dimensions, or location of any improvement erected on the Land;
       (iii)  the subdivision of land; or
       (iv)  environmental protection;
       or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
   (a) a fraudulent conveyance or fraudulent transfer; or
   (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy;
5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

## CONDITIONS

### 1 DEFINITION OF TERMS
The following terms when used in this policy mean:

(a) "Amount of Insurance": The amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b), or decreased by Sections 10 and 11 of these Conditions.

(b) "Date of Policy": The date designated as "Date of Policy" in Schedule A.

(c) "Entity": A corporation, partnership, trust, limited liability company, or other similar legal entity.

(d) "Insured": The Insured named in Schedule A.

   (i)   The term "Insured" also includes
      (A)  successors to the Title of the Insured by operation of law as distinguished from purchase, including heirs, devisees, survivors, personal representatives, or next of kin;
      (B)  successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization;
      (C)  successors to an Insured by its conversion to another kind of Entity;
      (D)  a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title
        (1)  If the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,
        (2)  If the grantee wholly owns the named Insured,
        (3)  If the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity, or
        (4)  If the grantee is a trustee or beneficiary of a trust created by a written instrument established by the Insured named in Schedule A for estate planning purposes.
   (ii)  With regard to (A), (B), (C), and (D) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured.

(e) "Insured Claimant": An Insured claiming loss or damage.

(f) "Knowledge" or "Known": Actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title.

(g) "Land": The land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.

(h) "Mortgage": Mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.

(i) "Public Records": Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.

(j) "Title": The estate or interest described in Schedule A.

(k) "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

### 2. CONTINUATION OF INSURANCE
The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

### 3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT
The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge shall come to an Insured hereunder of any claim of title or interest that is adverse to the Title, as insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if the Title, as insured, is rejected as Unmarketable Title. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's

liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

**4.    PROOF OF LOSS**

In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

**5.    DEFENSE AND PROSECUTION OF ACTIONS**

(a)   Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.

(b)   The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title, as insured, or to prevent or reduce loss or damage to the Insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

(c)   Whenever the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction, and it expressly reserves the right, in its sole discretion, to appeal any adverse judgment or order.

**6.    DUTY OF INSURED CLAIMANT TO COOPERATE**

(a)   In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b)   The Company may reasonably require the Insured Claimant to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

**7.    OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY**

In case of a claim under this policy, the Company shall have the following additional options:

(a)   To Pay or Tender Payment of the Amount of Insurance.

To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay.

Upon the exercise by the Company of this option, all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in this subsection, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b)   To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant.

(i)   To pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

(ii)  To pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

**8.    DETERMINATION AND EXTENT OF LIABILITY**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a)   The extent of liability of the Company for loss or damage under this policy shall not exceed the lesser of

(i)   the Amount of Insurance; or

(ii)  the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy.

(b)   If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title, as insured,

(i)   the Amount of Insurance shall be increased by 10%, and

(ii)  the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

(c)   In addition to the extent of liability under (a) and (b), the Company will also pay those costs, attorneys' fees, and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

**9.    LIMITATION OF LIABILITY**

(a)   If the Company establishes the Title, or removes the alleged defect, lien, or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b)   In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final

determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title, as insured.

(c) The Company shall not be liable for loss or damage to the insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

**10. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY**

All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Amount of Insurance by the amount of the payment.

**11. LIABILITY NONCUMULATIVE**

The Amount of Insurance shall be reduced by any amount the Company pays under any policy insuring a Mortgage to which exception is taken in Schedule B or to which the Insured has agreed, assumed, or taken subject, or which is executed by an Insured after Date of Policy and which is a charge or lien on the Title, and the amount so paid shall be deemed a payment to the Insured under this policy.

**12. PAYMENT OF LOSS**

When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

**13. RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT**

(a) Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees, and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise, or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies.

If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.

(b) The Company's right of subrogation includes the rights of the Insured to indemnities, guaranties, other policies of insurance, or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights.

**14. ARBITRATION**

Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other

controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured. All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

**15. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT**

(a) This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage that arises out of the status of the Title or by any action asserting such claim shall be restricted to this policy.

(c) Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.

(d) Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions. Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.

**16. SEVERABILITY**

In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid, but all other provisions shall remain in full force and effect.

**17. CHOICE OF LAW; FORUM**

(a) Choice of Law: The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies, or enforcement of policies of title insurance of the jurisdiction where the Land is located.

Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title that are adverse to the Insured and to interpret and enforce the terms of this policy. In neither case shall the court or arbitrator apply its conflicts of law principles to determine the applicable law.

(b) Choice of Forum: Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

**18. NOTICES, WHERE SENT**

Any notice of claim and any other notice or statement in writing required to be given to the Company under this Policy must be given to the Company at: Consumer Affairs Department PO Box 27567, Richmond, Virginia 23261-7567.

---

## THANK YOU.

Title insurance provides for the protection of your real estate investment. We suggest you keep this policy in a safe place where it can be readily available for future reference.

If you have questions about title insurance or the coverage provided by this policy, contact the office that issued this policy, or you may call or write:

Commonwealth Land Title Insurance Company
Consumer Affairs
P.O. Box 27567
Richmond, Virginia 23261-7567
telephone, toll free: 800 446-7086
web: www.landam.com

We thank you for choosing to do business with Commonwealth Land Title Insurance Company, and look forward to meeting your future title insurance needs.

Commonwealth Land Title Insurance Company
is a member of the LandAmerica family of title insurance underwriters.



B 1190-127

# OWNER'S POLICY OF TITLE INSURANCE

## Issued by Commonwealth Land Title Insurance Company

 **LandAmerica Commonwealth**

*Commonwealth Land Title Insurance Company is a member of the LandAmerica family of title insurance underwriters.*

**POLICY NUMBER**

**C30-0120273**

Any notice of claim and any other notice or statement in writing required to be given to the Company under this Policy must be given to the Company at the address shown in Section 18 of the Conditions.

**COVERED RISKS**

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, COMMONWEALTH LAND TITLE INSURANCE COMPANY, a Nebraska corporation (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 9 and 10, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1. Title being vested other than as stated in Schedule A.
2. Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from
   (a) A defect in the Title caused by
      (i) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
      (ii) failure of any person or Entity to have authorized a transfer or conveyance;
      (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
      (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;
      (v) a document executed under a falsified, expired, or otherwise invalid power of attorney;
      (vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
      (vii) a defective judicial or administrative proceeding.
   (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.
   (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.
3. Unmarketable Title.
4. No right of access to and from the Land.
5. The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (a) the occupancy, use, or enjoyment of the Land;
   (b) the character, dimensions, or location of any improvement erected on the Land;
   (c) the subdivision of land; or
   (d) environmental protection
   if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.
6. An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.
7. The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.
8. Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.
9. Title being vested other than as stated in Schedule A or being defective
   (a) as a result of the avoidance in whole or in part, or from a court order providing an alternative remedy, of a transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction vesting Title as shown in Schedule A because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or
   (b) because the instrument of transfer vesting Title as shown in Schedule A constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records
      (i) to be timely, or
      (ii) to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.
10. Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 9 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.

IN WITNESS WHEREOF, the Company has caused this Policy to be signed with the facsimile signatures of its President and Secretary and sealed as required by its By-Laws.

**COMMONWEALTH LAND TITLE INSURANCE COMPANY**



SEAL

Attest:

Secretary

By: _Theodore L Chandler_

President

Dbi Cover – ALTA Owner's Policy (06/17/08)
Form 1190-127
ORIGINAL
EXHIBIT 2
NJRB 1-15

Case 3:19-cv-00504   Document 1-1   Filed 06/14/19   Page 36 of 49 PageID #: 40



COMMONWEALTH LAND TITLE INSURANCE COMPANY

## SCHEDULE A

Amount of Insurance: **$1,255,000.00**

Policy No. **C30-0120273**

Premium: **Standard**

File No. **06-1536**

Date of Policy: **June 19, 2007,** at **1:23 P.M.**

1. Name of Insured: **SOUTHEASTERN LAND INVESTMENT, LLC**

2. The estate or interest in the land which is covered by this policy is: **Fee Simple**

3. Title to the estate or interest in the land is vested in:

**SOUTHEASTERN LAND INVESTMENT, LLC**

4. The land referred to in this Policy is described in said instrument, is situated in the County of Wilson, State of Tennessee, and is identified as follows:

**SEE ATTACHED EXHIBIT "A"**

**Being the same property conveyed to SOUTHEASTERN LAND INVESTMENT, LLC, by deed from JESSIE C. WALKER and wife, CYNTHIA D. WALKER, dated 06/18/2007, and of record in Book 1254, Page 1789, Register's Office for Wilson County, Tennessee.**

*ROCHELLE, MCCULLOCH & AULDS, P.L.L.C.*

Countersigned: _____

Authorized Officer or Agent

American Land Title Association OWNER
Schedule A
FORM 4180



COMMONWEALTH LAND TITLE INSURANCE COMPANY

| | |
|---|---|
| Policy No. | **C30-0120273** |
| File No. | **06-1536** |

### EXHIBIT "A"

Being a tract of land lying in Wilson County, Tennessee, also being Lot 7 of the Addition of Tract 7 to Tract Division, as of record in Plat Book 15, Page 166, at the Register's Office for Wilson County, Tennessee, and being more particularly described as follows;

Beginning at an iron rod set in the easterly right-of-way line of Cairo Bend, 50 feet in width, at a corner common with Lot 5 of the Addition of Tract 7 to Tract Division, also being the property of Deborah A. Petty, Et Vir, as of record in Deed Book 883, Page 991, at the Register's Office for Wilson County, Tennessee, said iron rod set being located at Northing: 710,994.62; Easting: 1,854,681.99; on the State Plane Coordinate System NAD-83 (1995);

Thence leaving the easterly right-of-way line of Cairo Bend, with the southerly property line of said Lot 5, with a curve to the left, along an arc length of 40.74 feet, the central angle of which is 93 deg 21 min 59 sec, the radius of which is 25.00 feet, the chord of which is South 35 deg 20 min 42 sec East, 36.38 feet to an existing iron rod;

Thence South 81 deg 41 min 48 sec East, 732.22 feet to an iron rod set;

Thence with a curve to the left, along an arc length of 266.39 feet, the central angle of which is 16 deg 06 min 17 sec, the radius of which is 947.72 feet, the chord of which is North 89 deg 52 min 07 sec East, 265.51 feet to an iron rod set;

Thence with a curve to the right, along an arc length of 193.37 feet, the central angle of which is 15 deg 05 min 17 sec, the radius of which is 734.31 feet, the chord of which is North 89 deg 21 min 36 sec East, 192.81 feet to an existing iron rod;

Thence South 83 deg 05 min 45 sec East, 11.99 feet to an existing iron pipe;

Thence with the easterly property line of said Lot 5 North 02 deg 23 min 15 sec East, 424.29 feet to an iron rod set in the southerly property line of Anne Lo Lien, as of record in Deed Book 452, Page 969, at the Register's Office for Wilson County, Tennessee, and at a corner common with Lot 6 of the Addition of Tract 7 to Tract Division, also being the property of James A. Spears, Et Ux, as of record in Deed Book 950, Page 1133, at the Register's Office for Wilson County, Tennessee;

Thence with the southerly property line of Anne Lo Lien, South 83 deg 04 min 42 sec East, 1056.29 feet to an existing concrete monument, at a corner common with the property of the U.S. Corp of Engineers;

Thence with the westerly property line of U.S. Corp of Engineers, South 24 deg 29 min 09 sec East, 609.21 feet to an existing "T" bar;

American Land Title Association OWNERS
Schedule A (continued)
FORM 4160



COMMONWEALTH LAND TITLE INSURANCE COMPANY

**SCHEDULE A (continued)**

Policy No. **C30-0120273**

File No. **06-1536**

**EXHIBIT "A" (continued)**

Thence South 00 deg 04 min 59 sec East, 580.44 feet to an existing iron rod, at a corner common with Lot 14 of Barton's Cove, as of record in Plat Book 24, Page 263, at the Register's Office for Wilson County, Tennessee, also being the property of Holly A. Drury, Et Vir, as of record in Deed Book 1080, Page 118, at the Register's Office for Wilson County, Tennessee;

Thence with the westerly property line of said Lot 14, South 07 deg 33 min 06 sec West, 367.62 feet to an iron rod set in the westerly terminus of Barton Shore, at a corner common with Tract No. 1 of the Katherine Watson Property, as of record in Plat Book 13, Page 57, at the Register's Office for Wilson County, Tennessee, also being the property of Estill Clark Goodwin, Et Ux, as of record in Deed Book 289, Page 143, at the Register's Office for Wilson County, Tennessee;

Thence leaving the westerly terminus of Barton Shore, with the northerly property line of said Tract No. 1, North 82 deg 12 min 17 sec West, 1034.31 feet to an existing iron rod, at a corner common with New Hope Cumberland Presbyterian Church, as of record in Deed Book 973, Page 1814, at the Register's Office for Wilson County, Tennessee;

Thence with the northerly property line of New Hope Cumberland Presbyterian Church, North 81 deg 35 min 53 sec West, 748.63 feet to an existing iron rod, at a corner common with the property of J.R. Woodcock, Et Ux, as of record in Deed Book 1043, Page 1216, at the Register's Office for Wilson County, Tennessee, and at a corner common with Lot 1A of Tract 1, Henderson Cole & Joe B. Ferrell, as of record in Plat Book 18, Page 216, at the Register's Office for Wilson County, Tennessee, also being the property of Charles E. Flatt, Et Ux, as of record in Deed Book 422, Page 475, at the Register's Office for Wilson County, Tennessee;

Thence with the easterly property line of said Lot 1A, North 20 deg 23 min 15 sec East, 993.22 feet to an existing iron rod, at a corner common with Lot 4 of the Addition of Tract 7 to Tract Division, also being the property of Jerry M. Swords, Et Ux, as of record in Deed Book 404, Page 33, at the Register's Office for Wilson County, Tennessee;

Thence with the northerly property line of said Lot 4, with a curve to the left, along an arc length of 180.21 feet, the central angle of which is 15 deg 05 min 17 sec, the radius of which is 684.31 feet, the chord of which is South 89 deg 21 min 37 sec West, 179.68 feet to an iron rod set;

Thence with a curve to the right, along an arc length of 280.44 feet, the central angle of which is 16 deg 06 min 17 sec, the radius of which is 997.72 feet, the chord of which is South 89 deg 52 min 07 sec West, 279.52 feet to an iron rod set;

American Land Title Association OWNERS
Schedule A (continued)
FORM 4100



COMMONWEALTH LAND TITLE INSURANCE COMPANY

## SCHEDULE A (continued)

Policy No.    **C30-0120273**

File No.    **06-1536**

### EXHIBIT "A" (continued)

Thence North 81 deg 41 min 56 sec West, 737.01 feet to an iron rod set;

Thence with a curve to the left, along an arc length of 38.37 feet, the central angle of which is 87 deg 56 min 12 sec, the radius of which is 25.00 feet, the chord of which is South 54 deg 00 min 12 sec West, 34.71 feet to an iron rod set in the easterly right-of-way line of Cairo Bend;

Thence with the easterly right-of-way line of Cairo Bend, with a curve to the right, along an arc length of 100.68 feet, the central angle of which is 01 deg 18 min 11 sec, the radius of which is 4426.70 feet, the chord of which is North 10 deg 41 min 12 sec East, 100.68 feet to the POINT OF BEGINNING. Containing 2,264,570 square feet or 51.987 acres more or less.

American Land Title Association OWNERS
Schedule A (continued)
FORM 4100



COMMONWEALTH LAND TITLE INSURANCE COMPANY

## SCHEDULE B
## EXCEPTIONS FROM COVERAGE

Policy No.    **C30-0120273**

File No.    **06-1536**

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Rights or claims of parties other than Insured in actual possession of any or all of the property.

2. Unrecorded easements, discrepancies or conflicts in boundary lines, shortage in area and encroachments, which an accurate and complete survey would disclose.

3. Unfiled mechanic's or materialmen's liens.

4. Taxes for the year 2007 are a lien not yet due and payable. Taxes for the year 2006 are paid.
   Map 26 Parcel 43.03

5. Subject to "roll-back taxes" for the statutory period if the land is converted to a use other than those stipulated in the provisions of T.C.A ., Sec. 67-5-1005 through 67-5-1007. Application from Tax Assessor of record in Green Belt Book 1099, Page 385, Register's Office for Wilson County, Tennessee.

6. Subject to any matters shown on the plat of record in Plat Book 15, Page 166, including but not limited to Tennessee Valley Authority right-of-way, easement, and creek as shown thereon.

7. Subject to a non exclusive easement for ingress/egress of record in Deed Book 315, Page 131.

8. Right-of-Way Easement in favor of Tennessee Valley Authority, of record in Deed Book 151, Page 256.

9. Gas Line Easement in favor of Gulf Interstate Gas Company, of record in Trust Deed Book 157, Page 629.

10. Utility Easement as set forth in Covenant's and Restrictions, of record in Trust Deed Book 369, Page 93.

11. 25' Right-of-Way Easement as set forth in Covenant's and Restrictions, of record in Trust Deed Book 369, Page 93.

12. The acreage mentioned in the legal description is only for convenience in identifying the tract insured; it is not intended that this policy insure the amount of acreage.

13. Subject to Jessie Walker and Jesse Walker being one and the same person.

14. Subject to the rise, flow, overflow, exact location and meanderings of creek located upon or running adjacent to the land.

15. Deed of Trust from SOUTHEASTERN LAND INVESTMENT, LLC, a Tennessee limited liability company, to OLDHAM & DUNNING, LLC of SUMNER COUNTY, TENNESSEE, Trustee, dated 06/18/2007, recorded in Book 1254, page 1794, in the Register's Office for Wilson County, Tennessee, securing the original principal sum of $2,200,000.00 to THE FARMERS BANK as set forth therein.

American Land Title Association OWNERS
Schedule B - Part II
FORM 4100

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.     (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
         (i) the occupancy, use, or enjoyment of the Land;
         (ii) the character, dimensions, or location of any improvement erected on the Land;
         (iii) the subdivision of land; or
         (iv) environmental protection;
   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
       (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
       (a) created, suffered, assumed, or agreed to by the Insured Claimant;
       (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
       (c) resulting in no loss or damage to the Insured Claimant;
       (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
       (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
       (a) a fraudulent conveyance or fraudulent transfer; or
       (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

## CONDITIONS

### 1 DEFINITION OF TERMS

The following terms when used in this policy mean:

(a) "Amount of Insurance": The amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b), or decreased by Sections 10 and 11 of these Conditions.

(b) "Date of Policy": The date designated as "Date of Policy" in Schedule A.

(c) "Entity": A corporation, partnership, trust, limited liability company, or other similar legal entity.

(d) "Insured": The Insured named in Schedule A.

(i) The term "Insured" also includes.

(A) successors to the Title of the Insured by operation of law as distinguished from purchase, including heirs, devisees, survivors, personal representatives, or next of kin;

(B) successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization;

(C) successors to an Insured by its conversion to another kind of Entity;

(D) a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title

(1) if the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,

(2) if the grantee wholly owns the named Insured,

(3) if the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity, or

(4) if the grantee is a trustee or beneficiary of a trust created by a written instrument established by the Insured named in Schedule A for estate planning purposes.

(ii) With regard to (A), (B), (C), and (D) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured.

(e) "Insured Claimant": An Insured claiming loss or damage.

(f) "Knowledge" or "Known": Actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title.

(g) "Land": The land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.

(h) "Mortgage": Mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.

(i) "Public Records": Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.

(j) "Title": The estate or interest described in Schedule A.

(k) "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

### 2. CONTINUATION OF INSURANCE

The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

### 3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT

The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge shall come to an Insured hereunder of any claim of title or interest that is adverse to the Title, as Insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if the Title, as Insured, is rejected as Unmarketable Title. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's

liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

**4. PROOF OF LOSS**

In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

**5. DEFENSE AND PROSECUTION OF ACTIONS**

(a) Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.

(b) The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title, as insured, or to prevent or reduce loss or damage to the Insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

(c) Whenever the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction, and it expressly reserves the right, in its sole discretion, to appeal any adverse judgment or order.

**6. DUTY OF INSURED CLAIMANT TO COOPERATE**

(a) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b) The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the

Company, it is necessary in the administration of the claim. Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

**7. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY**

In case of a claim under this policy, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Insurance.

To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay.

Upon the exercise by the Company of this option, all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in this subsection, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b) To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant.

(i) To pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

(ii) To pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

**8. DETERMINATION AND EXTENT OF LIABILITY**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a) The extent of liability of the Company for loss or damage under this policy shall not exceed the lesser of

(i) the Amount of Insurance; or

(ii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy.

(b) If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title, as insured,

(i) the Amount of Insurance shall be increased by 10%, and

(ii) the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

(c) In addition to the extent of liability under (a) and (b), the Company will also pay those costs, attorneys' fees, and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

**9. LIMITATION OF LIABILITY**

(a) If the Company establishes the Title, or removes the alleged defect, lien, or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final

determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title, as insured.

(c) The Company shall not be liable for loss or damage to the insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.

**10. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY**

All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Amount of Insurance by the amount of the payment.

**11. LIABILITY NONCUMULATIVE**

The Amount of Insurance shall be reduced by any amount the Company pays under any policy insuring a Mortgage to which exception is taken in Schedule B or to which the Insured has agreed, assumed, or taken subject, or which is executed by an Insured after Date of Policy and which is a charge or lien on the Title, and the amount so paid shall be deemed a payment to the Insured under this policy.

**12. PAYMENT OF LOSS**

When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

**13. RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT**

(a) Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees, and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise, or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies.

If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.

(b) The Company's right of subrogation includes the rights of the Insured to indemnities, guaranties, other policies of insurance, or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights.

**14. ARBITRATION**

Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured. All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

**15. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT**

(a) This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage that arises out of the status of the Title or by any action asserting such claim shall be restricted to this policy.

(c) Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.

(d) Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions. Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.

**16. SEVERABILITY**

In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid, but all other provisions shall remain in full force and effect.

**17. CHOICE OF LAW; FORUM**

(a) Choice of Law: The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies, or enforcement of policies of title insurance of the jurisdiction where the Land is located.

Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title that are adverse to the Insured and to interpret and enforce the terms of this policy. In neither case shall the court or arbitrator apply its conflicts of law principles to determine the applicable law.

(b) Choice of Forum: Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

**18. NOTICES, WHERE SENT**

Any notice of claim and any other notice or statement in writing required to be given to the Company under this Policy must be given to the Company at: Consumer Affairs Department PO Box 27567 Richmond, Virginia 23261-7567.

---

**THANK YOU.**

Title Insurance provides for the protection of your real estate investment. We suggest you keep this policy in a safe place where it can be readily available for future reference.

If you have questions about title insurance or the coverage provided by this policy, contact the office that issued this policy, or you may call or write:

Commonwealth Land Title Insurance Company
Consumer Affairs
P.O. Box 27567
Richmond, Virginia 23261-7567
*telephone, toll free:* 800 446-7086
*web:* www.landam.com

We thank you for choosing to do business with Commonwealth Land Title Insurance Company, and look forward to meeting your future title insurance needs.

Commonwealth Land Title Insurance Company
is a member of the LandAmerica family of title insurance underwriters.


LandAmerica
Commonwealth

B 1190-127

## IN THE CIRCUIT COURT FOR WILSON COUNTY, TENNESSEE
## AT LEBANON

| | |
|---|---|
| SOUTHEASTERN LAND INVESTMENT, LLC<br>and WILSON LAND INVESTMENTS, LLC | )<br>) |
|     Plaintiffs, | )<br>) |
| v. | )<br>) |
| COMMONWEALTH LAND TITLE<br>INSURANCE COMPANY, | )<br>) |
|     Defendant. | )<br>) |

Docket No.: 2019-CV-197
JURY DEMAND

---

## AFFIDAVIT OF LAST KNOWN ADDRESS FOR COMMONWEALTH LAND TITLE INSURANCE COMPANY PURSUANT TO TENN. CODE ANN. §56-2-504(b)

---

Having been first duly sworn, Todd E. Panther states under oath as follows:

1.    I am a resident of Tennessee; I am over 21 years of age; I am competent to testify in a legal proceeding; and I have personal knowledge of the facts contained in this affidavit.

2.    The defendant in the above-captioned action is Commonwealth Land Title Insurance Company, a Florida corporation authorized to transact business in Tennessee and holding NAIC no. 50083.

3.    The last known address for Commonwealth Land Title Insurance Company is set forth below:

> Commonwealth Land Title Insurance Company
> 601 Riverside Avenue
> Building 5, Fourth Floor
> Jacksonville, Florida 32204
> Attention: Ronald Kaiser, Senior Claims Counsel

892295.1  12304-001

Further Affiant Sayeth Not.

_____
Todd E. Panther

STATE OF TENNESSEE   )
                              )
COUNTY OF DAVIDSON  )

    Sworn and subscribed before me on this 5th day of April, 2019.

_____
Notary Public

My Commission Expires: September 7, 2021

2



Phone: (615)444-2042

**STATE OF TENNESSEE 15TH JUDICIAL DISTRICT**
**WILSON COUNTY, LEBANON, TENNESSEE**

**CASE NUMBER**
2019-CV-197

| | | |
|---|---|---|
| Southeastern Land Investment, LLC and | **VS** | Commonwealth Land Title Insurance Company |
| Wilson Land Investments, LLC | | 601 Riverside Ave., Building 5, 4th Floor, Jacksonville, FL 32204 |
| | | Attn: Ronald Kaiser, Sr. Claims Counsel |
| **PLAINTIFF** | | **DEFENDANT** |

# CIRCUIT COURT SUMMONS

**To the above Defendant:**

You are summoned to appear and defend a civil action filed against you in Circuit Court, 134 S. College Street, Lebanon, Wilson County, Tennessee, and your defense must be made within thirty (30)days from the date this summons is served upon you. You are further directed to file your defense with the Clerk of the Court and send a copy to the Plaintiff's attorney at the address below:

ATTORNEY FOR PLAINTIFF: Todd E. Panther          Phone No. (615) 742-4594

Sherrard Roe Voigt & Harbison, PLC

150 3rd Avenue South, Suite 1100, Nashville, TN 37201

In case of your failure to defend this action by the above date, judgment by default will be rendered against you for the relief demanded in the complaint.

Method of service:
☐ Wilson County Sheriff          ☐ Out of county Sheriff          ☐ Secretary of State

☐ Certified mail          ☐ Personal Service          ☑ Commissioner of Insurance

ISSUED: 4/5 , 20 19

DEBBIE MOSS, Circuit Court Clerk, Wilson County

By: Megan Swinkey ,Deputy Clerk

---

## OFFICER'S RETURN
(Please serve and return within ninety (90) days from date of issuance as provided by law)

I, hereby certify and return, that on the _____ of _____ 20_____, I served this summons together

with the complaint herein as follows:_____

_____

_____

by, _____**SHERIFF**

---

## RETURN OF SUMMONS BY MAIL

I, hereby certify and return, that on the _____ day of _____, 20_____, I sent, postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in Case No._____to the defendant,_____. On the _____ day of _____, 20_____ I received the return receipt of said registered or certified mail, which has been signed by _____ _____ on the _____ day of _____ 20_____. Said return receipt is attached to this original summons and both documents are being sent herewith to the Circuit Court Clerk for filing.

SWORN AND SUBSCRIIBED TO ME ON

THIS _____ DAY OF _____ON 20_____

_____
___NOTARY PUBLIC or ___DEPUTY CLERK

MY COMMISSION EXPIRES_____

PLAINTIFF'S ATTORNEY OR OTHER PERSON
AUTHORIZED BY THE STATUTE TO SERVE
PROCESS

**TO THE DEFENDANT(S):**

Tennessee law provides a four thousand dollar ($10,000) Personal Property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution of garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.
Pursuant to section T.C.A.26-518-523.

ATTACH RETURN
RECEIPT HERE

(IF APPLICABLE)

## CERTIFICATE OF SERVICE

I hereby certify that I have caused a true and correct copy of the foregoing DEFENDANT'S

NOTICE OF REMOVAL to be served by having same placed in the United States Mail, postage

prepaid, addressed as follows:

Todd E. Panther
Lauren Z. Curry
Sherrard Roe Voight & Harbison, PLC
150 third Avenue South, Suite 1100
Nashville, Tennessee 37201

This 14th day of June, 2019.

FIDELITY NATIONAL LAW GROUP

*/s/ Elizabeth B. Padgett*
Elizabeth B. Padgett
TN BPR No. 022635
Lawrence W. Kelly
TN BPR No. 019229
Attorneys for Defendant

4170 Ashford Dunwoody Road, Suite 460
Atlanta, Georgia 30319
Direct: (770) 325-4815
Fax: (404) 479-2591
Email: Elizabeth.padgett@fnf.com

5